**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3502-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHAROD MASSEY, a/k/a
STYKEEM DAVIS,

    Defendant-Appellant.

_____

Argued October 2, 2023 – Decided February 4, 2025

Before Judges DeAlmeida, Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 19-10-2903.

Thomas P. Belsky, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Thomas P. Belsky, of counsel and on the brief).

Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex

County Prosecutor, attorney; Hannah Faye Kurt, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Sharod Massey appeals from the March 4, 2020 judgment of conviction entered after a jury found him guilty of two counts of second-degree possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1), as well as the extended-term sentence he received under N.J.S.A. 2C:44-3(a). We affirm defendant's convictions, vacate his extended-term sentence, and remand for proceedings consistent with the holdings in Erlinger v. United States, 602 U.S. 821 (2024), and State v. Carlton, ___ N.J. Super. ___, ___ (App. Div. 2024).

I.

On October 7, 2018, Shane Rouse was shot and killed in Newark. Police suspected defendant was involved in the murder, although he was never charged in relation to Rouse's death.

On November 16, 2018, Detective Ramon Candelaria obtained a warrant to search for evidence, including ballistic and cellular evidence, connected to the Rouse murder in defendant's Newark apartment. The warrant described defendant's premises by its street address and "Apartment #31." At the same

time, Candelaria obtained a warrant to search defendant's 2001 Ford Explorer. The detective submitted affidavits he signed in support of the warrant applications.

The warrants were executed on November 20, 2018. When Candelaria knocked on the door of Apartment #31, defendant answered. The detective told defendant he had questions to ask him about the Rouse murder. Defendant agreed to go to the prosecutor's office with the detective for an interview.

At the prosecutor's office, Candelaria and another detective questioned defendant about the shooting. After waiving his Miranda[1] rights, defendant denied involvement in the murder. At the end of the interview, the detectives released defendant.

While the interview was taking place, investigators searched defendant's residence and vehicle. They found a safe inside the bedroom closet of the residence, which they took to the prosecutor's office and logged in as evidence. Candelaria subsequently obtained a warrant to search the safe. He submitted an affidavit in support of the warrant application. Candelaria opened the safe the following day and discovered two handguns and a New Jersey motor vehicle

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-3502-19

title for defendant's Ford Explorer. The search of defendant's vehicle did not uncover evidence of criminal activity.

Candelaria obtained a complaint-warrant charging defendant with: (1) possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (.38-caliber special revolver); (2) possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (.40-caliber revolver); and (3) possession of a defaced handgun, N.J.S.A. 2C:39-3(d) (.38-caliber special revolver). After learning that one of the guns found in defendant's safe was a ballistics match to the Rouse murder, Candelaria had defendant return to the prosecutor's office for further interrogation. Candelaria and Detective Murad Muhammad told defendant he was under arrest for "possession of a handgun" before he waived his Miranda rights and agreed to be questioned. The detectives did not inform defendant Candelaria had obtained a complaint-warrant or tell him the specific charges lodged against him. During the interrogation, defendant admitted he purchased and possessed the handguns found in his safe.

A grand jury subsequently indicted defendant, charging him with two counts of second-degree possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

4

Before trial, defendant moved to suppress the handguns, arguing the affidavits supporting the warrants for his residence and safe did not establish probable cause that evidence related to the Rouse murder would be found in either location. At the hearing on the suppression motion, neither party called witnesses. They instead relied on the affidavits submitted in support of the warrants. Defendant argued the affidavits failed to show how the information in them linked him to Rouse's murder or established that evidence related to the murder was likely to be found in his apartment or the safe. In an oral decision, the court denied the motion.

Also prior to trial, the State moved to admit defendant's recorded statement to the detectives during his second interrogation, with redactions to reflect only questions and responses related to the weapons charges. Defendant objected, arguing he did not knowingly and voluntarily waive his Miranda rights because he was not verbally informed of the complaint-warrant or of the specific charges against him.

The court held a hearing at which Candelaria was a witness. He testified that when defendant arrived at the prosecutor's office Candelaria had a copy of the complaint-warrant charging defendant with the certain persons offenses. He did not testify that he verbally informed defendant of the complaint-warrant or

5

of the specific charges against him prior to defendant's waiver of his <u>Miranda</u> rights.

The transcript and video recording of defendant's interrogation confirm that neither detective notified defendant of the complaint-warrant or the specific charges lodged against him. The following exchange took place before defendant waived his <u>Miranda</u> rights:

> DET. MUHAMMAD: You – you are currently – you're under arrest.
>
> DEFENDANT: I'm under arrest now?
>
> DET. MUHAMMAD: Yeah.
>
> DET. CANDELARIA: Yes.
>
> DEFENDANT: For what?
>
> DET. MUHAMMAD: For possession of a handgun.
>
> DEFENDANT: Right. So right now I'm under arrest.
>
> DET. MUHAMMAD: Yeah.
>
> DET. CANDELARIA: You're under arrest right now, yes.
>
> . . . .
>
> DEFENDANT: . . . I just want to know, right? Y'all told me I was under arrest, right? So –

DET. MUHAMMAD:   Yeah.

DET. CANDELARIA:   Yes.

DEFENDANT:       So for right – so I'm arrested for possession of handguns.

DET. MUHAMMAD:   That's correct.

DET. CANDELARIA:   Right.

DEFENDANT:       Right now that's what I'm arrested for.

DET. CANDELARIA:   Yes.  That's true.

DEFENDANT:       All right.

The court issued an oral decision granting the State's motion.  The court found defendant was informed he was under arrest for possession of a weapon, was informed of his <u>Miranda</u> rights, and made a knowing and intelligent waiver of those rights.  Although the court did not mention in its decision defendant's argument that his waiver was invalid because he was not informed of the complaint-warrant or the precise charges he faced, it is apparent the court was not persuaded by that argument.

The only disputed issue at trial was whether defendant constructively possessed the firearms charged in the indictment.  The parties stipulated to the element of the offenses concerning defendant's predicate prior conviction.  Proof

7

that defendant was the lessee of Apartment #31 was entered into evidence. The detectives who conducted the search of defendant's residence testified defendant was present at the apartment and the safe was found in defendant's closet. Candelaria testified the handguns and title to defendant's vehicle were found in the safe the following day. A video recording of defendant's interrogation, which included his admission to having purchased the handguns, was admitted into evidence. A jury convicted defendant of both charges.

At sentencing, the court granted the State's motion to sentence defendant to an extended-term sentence as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). In support of its application, the State produced evidence defendant had thirteen convictions over a period of twelve years prior to his convictions in this matter. In response to the State's motion, defendant's counsel stated "[h]e's clearly a persistent offender. You could grant that motion and declare him a persistent offender," but requested the court exercise its discretion to sentence defendant to a term at the lower end of the applicable range. The court found the State established each of the elements of N.J.S.A. 2C:44-3(a).

The court found the applicable aggravating factors preponderated over the mitigating factors and warranted sentencing at the higher end of the range for an extended term. The court sentenced defendant to eighteen years in prison, with

8

a nine-year period of parole ineligibility, on each count of the indictment and directed the sentences be served concurrently.[2]

This appeal follows. Defendant raises the following arguments.

POINT I

BECAUSE THE SUPPORTING AFFIDAVITS, WHICH WERE BASED ON UNRELIABLE HEARSAY, FAILED TO ESTABLISH PROBABLE CAUSE THAT EVIDENCE OF THE MURDER WOULD BE FOUND IN ROOM #31 NEARLY TWO MONTHS AFTER THE CRIME OCCURRED, THE WARRANTS AUTHORIZING THE SEARCHES WERE INVALID AND THE TRIAL COURT SHOULD HAVE GRANTED [DEFENDANT'S] MOTION TO SUPPRESS THE GUNS FOUND PURSUANT TO THOSE WARRANTS.

POINT II

BECAUSE THE INTERROGATING DETECTIVES DID NOT TELL [DEFENDANT] THAT HE HAD ALREADY BEEN CHARGED ON A COMPLAINT-WARRANT WITH THE CERTAIN PERSONS OFFENSES, HE COULD NOT HAVE KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHTS AGAINST SELF-INCRIMINATION. THEREFORE, HIS STATEMENT SHOULD HAVE BEEN SUPPRESSED.

---

[2] Although the court stated it was imposing an extended-term sentence on both convictions, the judgment of conviction (JOC) indicates defendant received an extended-term sentence only on count one. According to the JOC, the court sentenced defendant to a ten-year term of imprisonment with a five-year period of parole ineligibility on count two concurrent with the sentence on count one. Because we vacate defendant's sentence, we need not address this discrepancy.

9

POINT III

THE TRIAL COURT DEPRIVED [DEFENDANT] OF HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY BY REJECTING, IN DEFIANCE OF SUPREME COURT GUIDANCE IN CERTAIN PERSON CASES, HIS REQUEST TO EXPLORE WITH POTENTIAL JURORS THE ISSUE OF PROPENSITY AND WHETHER KNOWLEDGE OF A DEFENDANT'S PRIOR CONVICTION WOULD IMPACT THEIR BELIEF THAT HE WAS GUILTY OF NEW CHARGES.

POINT IV

BECAUSE THE STATE DEPRIVED [DEFENDANT] A FAIR TRIAL BY REPEATEDLY AND UNNECESSARILY REFERENCING MULTIPLE SEARCH WARRANTS AND AN ARREST WARRANT ISSUED IN RELATION TO HIM, AND BECAUSE THE TRIAL COURT FAILED TO GIVE A LIMITING INSTRUCTION CONCERNING THIS EVIDENCE, THE COURT SHOULD SET ASIDE [DEFENDANT'S] CONVICTIONS AND SENTENCE.

POINT V

THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE, ESPECIALLY THE ERRORS RELATED TO JURY SELECTION AND THE UNNECESSARY REFERENCES TO WARRANTS, DEPRIVED [DEFENDANT] OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL SUCH THAT HIS CONVICTIONS SHOULD BE REVERSED.

POINT VI

RESENTENCING IS REQUIRED BECAUSE THE SENTENCING COURT, AFTER ALREADY EXPANDING [DEFENDANT'S] SENTENCING RANGE BY FINDING HIM A PERSISTENT OFFENDER, IMPROPERLY GAVE "SIGNIFICANT WEIGHT" TO AGGRAVATING FACTORS THREE, SIX, AND NINE BASED SOLELY ON HIS CRIMINAL RECORD WHICH RESULTED IN AN EXCESSIVE SENTENCE OF EIGHTEEN YEARS' INCARCERATION WITH A NINE-YEAR PERIOD OF PAROLE INELIGIBILITY FOR AN ORDINARY CERTAIN PERSON CASE.

II.

A.    Motion to Suppress.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44 (2011). We review a motion judge's factual findings after a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). We defer "to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no

11                                                                    A-3502-19

deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts.  Our review in that regard is de novo.  State v. Watts, 223 N.J. 503, 516 (2015).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution "protect [the State's] citizens against unreasonable police searches and seizures by requiring warrants issued upon probable cause 'unless [the search] falls within one of the few well-delineated exceptions to warrant requirement.'"  State v. Maryland, 167 N.J. 471, 482 (2001) (second alteration in original) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  "A search that is executed pursuant to a warrant is 'presumptively valid,' and a defendant challenging the issuance of that warrant has the burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'"  State v. Boone, 232 N.J. 417, 427 (2017) (quoting Watts, 223 N.J. at 513-14).

Probable cause is "consistently characterized . . . as a common-sense, practical standard for determining the validity of a search warrant."  State v. Novembrino, 105 N.J. 95, 120 (1987).  It is met when police have "a 'well grounded' suspicion that a crime has been or is being committed."  State v. Waltz, 61 N.J. 83, 87 (1972) (quoting State v. Burnett, 42 N.J. 377, 387 (1964)).

12

The United States Supreme Court similarly described probable cause as a "practical, nontechnical conception." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Probable cause requires more than mere suspicion; it requires a showing of a "fair probability" that criminal activity is taking place. State v. Demeter, 124 N.J. 374, 380-81 (1991) (quoting Gates, 462 U.S. at 238). Courts must base a probable cause determination on the totality of the circumstances and consider the probabilities. State v. Jones, 179 N.J. 377, 389 (2004) (citing Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

In assessing the showing of probable cause upon a motion to suppress, "[t]he critical and only question is whether a sufficient showing of probable cause to search was presented to the warrant-issuing judge," State v. Chippero, 201 N.J. 14, 31-32 (2009), and "substantial deference must be paid by a reviewing court to th[at] determination," State v. Evers, 175 N.J. 355, 381 (2003).

In asserting the foundation for probable cause, the affidavit may rely on inadmissible evidence such as hearsay. State v. Smith, 155 N.J. 83, 92 (1998); State in Interest of E.S., 470 N.J. Super. 9, 21 (App. Div. 2021) ("A probable cause finding may be supported by hearsay or other inadmissible proof.").

13                                                      A-3502-19

Hearsay may be used to provide the basis for probable cause so long as there is independent evidence supporting its reliability. Smith, 155 N.J. at 92. Generally, two factors that are considered highly relevant, if not essential, to the use of such statements "are the informant's 'veracity' and the informant's 'basis of knowledge.'" Id. at 93 (quoting Gates, 462 U.S. at 238). Along the same lines, an informant's tip can be relied upon so long as it has a basis in veracity and knowledge. State v. Sullivan, 169 N.J. 204, 212 (2001).

Candelaria's affidavits were based on two hearsay statements. First, an unidentified source or sources in Rouse's family told members of the prosecutor's office Rouse had an argument approximately two days before the murder with defendant, whom they identified only by his street name. Second, a named witness told members of the prosecutor's office "that word on the street" was that defendant murdered Rouse. That witness stated that when Rouse was released from prison he began selling controlled dangerous substances (CDS) in an area of South Fifteenth Street which defendant considered to be his exclusive territory for the distribution of CDS. According to the witness, defendant warned Rouse to stop selling CDS at that location.

The detective investigated the reliability of the witness statements and discovered: (1) a phone number associated with defendant's street name was

14

found in Rouse's cellphone; (2) defendant had several CDS-related arrests in the area where one witness claimed defendant was selling CDS; (3) defendant's social media account displayed a photograph of a tattoo of the street name identified by Rouse's family on defendant's back; (4) motor vehicle records indicated defendant owned a two-door Ford Explorer; (5) defendant's social media account displayed a photograph of defendant next to a two-door, dark Ford Explorer; (6) video surveillance cameras captured a black Ford Explorer travelling close to, and parking near, the location of Rouse's murder shortly before the murder before driving away; (7) a video surveillance camera captured the Ford Explorer return to the location of the murder three minutes prior to the shooting and park. No one exited the vehicle and its headlights were turned off. When the shooting of Rouse commenced, the Ford Explorer slowly drove away after its headlights were turned on; (8) a video surveillance camera captured defendant parking his Ford Explorer in the driveway of his residence and entering his apartment about an hour after the murder, leaving about eight minutes later, and returning about an hour after that; and (9) defendant signed a lease for Apartment #31 approximately eight months prior to the murder.

Defendant argues the motion court erred when it denied his motion to suppress because Candelaria did not provide sufficient information to establish

the veracity of the statements made by the witnesses. Although defendant concedes the witnesses were ordinary citizens entitled to a presumption of veracity, State v. Basil, 202 N.J. 570, 586 (2010) ("Generally speaking, information imparted by a citizen directly to a police officer will receive greater weight than information received from an anonymous tipster."), he argues Candelaria failed to provide substantial corroboration of the information they conveyed to establish probable cause for the warrants. Defendant characterizes the witness statements as unsubstantiated rumors.

Defendant argues his history of arrests, with no accompanying evidence of convictions, do not establish he was involved in selling CDS at the location of the murder. Nor, defendant argues, did the detective uncover any evidence that Rouse was engaged in distributing CDS near the location of the murder.

Defendant also argues the detective produced no evidence the Ford Explorer seen in surveillance videos was defendant's vehicle. Candelaria did not state in his affidavits that the truck depicted in the video had any distinctive characteristics that matched those of defendant's truck. Nor, defendant argues, did the detective provide any information connecting the Ford Explorer in the videos to the murder. To the contrary, defendant argues, the fact that no one exited the vehicle in the minutes before the murder and that the truck drove away

16

when the shooting began suggests the Ford Explorer was not connected to the murder. In addition, defendant notes the affidavits state that eyewitnesses saw Rouse's murderer approach on foot and flee down an alley after the shooting.

Defendant also argues Candelaria produced no information suggesting evidence of the murder would be found in Apartment #31 or in the safe found in the apartment. He notes the surveillance video of defendant entering his residence does not depict him carrying any bags or packages into the apartment. In addition, defendant argues the detective was aware defendant was also associated with an address in Orange, diminishing the likelihood evidence of the murder would be found at his Newark apartment.

Finally, defendant argues the information in the affidavits was stale. In support of this argument, defendant notes the search warrants were issued nearly two months after the murder.

We see no basis on which to reverse the motion court's denial of defendant's suppression motion. The family members provided detailed information regarding Rouse's fight with defendant. They identified when the fight happened and the street name of the person with whom Rouse fought. Candelaria corroborated the information in part when he discovered a number in Rouse's cellphone for a person with the street name identified by his family

17

members.  The detective also discovered evidence defendant had the street name identified by Rouse's family tattooed on his back.

Candelaria also corroborated in part the information provided by the other witness.  The detective determined, consistent with the witness's report, defendant had been arrested several times for CDS-related offenses in the area where Rouse was killed, corroborating the witness's statement that "word on the street" was defendant killed Rouse because of a dispute over control of CDS distribution in the location of the murder.

The detective also confirmed defendant's ownership of a vehicle of the type seen near the location of the murder, including at the time of the shooting. He confirmed defendant's lease of Apartment #31, his occupancy of that unit for approximately eight months, and his presence there shortly after the murder.

With respect to the search of defendant's apartment, based on the totality of the circumstances, the record contains sufficient support for the conclusion that Candelaria's affidavits establish "that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched."  Boone, 232 N.J. at 426 (quoting Jones, 179 N.J. at 388).

18

We reach the same conclusion with respect to the warrant to search the safe found in defendant's apartment. Given the validity of the warrant to search defendant's apartment, it is evident probable cause existed to search a locked safe in the bedroom of the apartment. If defendant was harboring evidence of his involvement in a murder in his apartment, it is likely the evidence would be stashed in a locked safe.

We are not persuaded by defendant's argument the motion court erred because the information in Candelaria's affidavits was stale. Undoubtedly, "probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued." State v. Blaurock, 143 N.J. Super. 476, 479 (App. Div. 1976). However, "[t]he question of the staleness of probable cause depends more on the nature of the unlawful activity alleged in the affidavit than the dates and times specified therein." Ibid. (quoting United States v. Harris, 482 F.2d 1115, 1119 (3d Cir. 1973)). Indeed,

> "the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous

19

nature, a course of conduct, the passage of time becomes less significant."

[Ibid. (quoting United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972)).]

While it is possible defendant could have discarded evidence between the time of the murder and issuance of the search warrants, it was reasonable for the motion court to conclude evidence of the murder, including ballistic and cellular evidence, which were identified in the affidavit, was likely to be found in defendant's apartment and safe.

B.    Miranda Waiver.

Our review of the record revealed no basis on which to conclude the motion court erred when it granted the State's motion to admit the inculpatory statements defendant made during his interrogation. "The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. S.S., 229 N.J. 360, 381-82 (2017) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). "Our law maintains 'an unyielding commitment to ensure the proper admissibility of confessions.'" State v. Sims, 250 N.J. 189, 211 (2022) (quoting State v. Vincenty, 237 N.J. 122, 132 (2019)).

Generally, "a knowing, intelligent, and voluntary waiver" of Miranda rights "is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court." State v. A.M., 237 N.J. 384, 398 (2019); see also State v. Presha, 163 N.J. 304, 313 (2000). When making this analysis, courts consider the defendant's age, education, and intelligence, whether they were advised of their constitutional rights, the length of the detention, whether the interrogation was repeated and prolonged, and whether physical punishment or mental exhaustion were involved. Nyhammer, 197 N.J. at 402. Because New Jersey provides greater protections than afforded under federal law, Vincenty, 237 N.J. at 132, "our review of police-obtained statements is 'searching and critical' to ensure protection of a defendant's constitutional rights." State v. Burney, 471 N.J. Super. 297, 314 (App. Div. 2022) (quoting State v. Patton, 362 N.J. Super. 16, 43 (App. Div. 2003)). "[F]or the statement to be admissible, the court must find it was voluntary beyond a reasonable doubt." Id. at 315.

We are not persuaded by defendant's argument that his waiver of Miranda rights was invalid because Candelaria did not inform him the detective had obtained a complaint-warrant or identify with specificity the charges lodged against him. We are guided in our analysis by three Supreme Court precedents.

In State v. A.G.D., 178 N.J. 56, 59 (2003), detectives obtained an arrest warrant for the defendant after interviewing the victim of a sexual assault. They subsequently met with the defendant and told him they wanted to interview him about allegations of sexual abuse made against him. Ibid. They did not inform him of the warrant or the specific charges against him. Ibid. The detectives thereafter obtained the defendant's waiver of his Miranda rights after which he made inculpatory statements. Id. at 60. After his conviction, the defendant argued, among other things, "that the detectives had violated his rights by failing to inform him about the outstanding arrest warrant, notwithstanding his signed waiver of Miranda rights." Id. at 61.

We rejected the defendant's claims. Id. at 61-62. The Supreme Court reversed. Id. at 69. The Court held that "[t]he government's failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights." Id. at 68. The Court reasoned,

> a criminal complaint and arrest warrant signify that a veil of suspicion is about to be draped on the person, heightening his risk of criminal liability. Without advising the suspect of his true status when he does not otherwise know it, the State cannot sustain its burden to the Court's satisfaction that the suspect has exercised an informed waiver of rights, regardless of other factors that might support his confession's admission.

22

[Ibid.]

In <u>Vincenty</u>, the defendant was interrogated by detectives after charges had been filed against him. 237 N.J. at 127. The officers obtained the defendant's waiver of his <u>Miranda</u> rights without informing him that charges had been filed. <u>Ibid.</u> After the defendant signed the waiver that detectives stated that "the judge already charged" him and that the detectives "have the charges." <u>Ibid.</u> During the interrogation, the defendant denied involvement in criminal activity. <u>Id.</u> at 128. In response, the detectives stated "that they 'presented the evidence to the judge,' who 'put the charges in.'" <u>Ibid.</u> The detectives later showed the defendant a list of the charges lodged against him. <u>Ibid.</u>

The defendant moved to suppress inculpatory statements he made during the interrogation, arguing the detectives failed to comply with <u>A.G.D.</u> by not informing him of the arrest warrant and charges pending against him prior to obtaining his <u>Miranda</u> waiver. <u>Id.</u> at 129. The trial court denied the motion. <u>Id.</u> at 130. We affirmed. <u>Ibid.</u>

The Supreme Court reversed. <u>Id.</u> at 136. The Court explained that "<u>A.G.D.</u> . . . calls for law enforcement officials to make a simple declaratory statement at the outset of an interrogation that informs a defendant of the essence of the charges filed against him." <u>Id.</u> at 134. The Court continued, "[t]he State

23

may choose to notify defendants immediately before or after administering Miranda warnings, so long as defendants are aware of the charges pending against them before they are asked to waive the right [against] self-incrimination." Ibid. The Court concluded the defendant's wavier was not knowing and intelligent because he was unaware "that charges had been filed against him" before he waived his Miranda rights. Ibid. The Court noted that when detectives asked the defendant "to waive his right against self-incrimination, they failed to inform him of the specific criminal charges filed against him." Id. at 135.

In Sims, 250 N.J. at 199, after an investigation, but before a complaint or warrant was issued, two detectives arrested the defendant and transported him to a police station for an interrogation. After the detectives read him his Miranda rights, the defendant asked, "[s]o, I'm under arrest of something?" Ibid. A detective responded, "[y]ou are under arrest[,] yes . . . . I'm sure you have a ton of questions. I'll be happy to get into all that, okay, in just a few minutes. Let's just finish this form. Okay?" Ibid. The defendant then waived his Miranda rights. Ibid. During the interview that followed, the defendant made inculpatory statements. Ibid. The detectives did not inform the defendant of any specific charges that might be brought against him as a result of the investigation.

24

The defendant was later indicted. Id. at 199-200. He moved to suppress his statement to police on grounds not relevant here. Id. at 200. The trial court denied his motion. Ibid. On appeal, the defendant for the first time argued the waiver of his Miranda rights was invalid because the detectives "did not tell him why he was arrested" prior to the interrogation. Id. at 204. In a split decision, we held that the trial court committed plain error when it admitted defendant's statement to police during his interrogation. Ibid. The majority held that A.G.D. and Vincenty required a defendant to be advised of the "actual" and "specific" charges he is facing whether or not such charges have been formally filed. Id. at 205.

The Supreme Court reversed. The Court held that

> The rule announced in A.G.D. is clear and circumscribed. If a complaint-warrant has been filed or an arrest warrant has been issued against a suspect whom law enforcement officers seek to interrogate, the officers must disclose that fact to the interrogee and inform him in a simple declaratory statement of the charges filed against him before any interrogation.
>
> [Id. at 213.]

"The rule of A.G.D. mandates disclosure of factual information about pending charges that the officer can readily confirm and clearly convey." Id. at 214.

A-3502-19

Our review of defendant's custodial interrogation does not demonstrate a violation of the principles articulated in A.G.D., Vincenty, and Sims. Prior to signing a waiver of his Miranda rights, defendant was told he had been charged with possession of a weapon and was under arrest for those charges. Almost immediately after being informed of the charges defendant admitted to purchasing the weapons on the street a few days before the search of his apartment. While the detectives did not mention they had obtained a complaint-warrant, they repeatedly and plainly stated defendant was under arrest for possession of a weapon.

We agree the detectives did not abide by the clear holding in A.G.D. requiring disclosure of the complaint-warrant to defendant. However, they made "a simple declaratory statement at the outset of an interrogation that inform[ed] defendant of the essence of the charges filed against him." Vincenty, 237 N.J. at 134. Before making inculpatory statements, defendant repeatedly expressed his understanding that he had been arrested for possession of a weapon. On the record before us, we do not consider the detectives' failure to inform defendant of the complaint-warrant to be fatal to the validity of defendant's Miranda waiver.

In addition, we see no departure from the holding in A.G.D. in the detectives' failure to specify precisely the charges lodged against defendant in the complaint-warrant. Unlawful possession of a weapon, N.J.S.A. 2C:39-5, and possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1), are distinct offenses. The penalty for a conviction of a certain persons offense is more severe than that for a conviction of unlawful possession of a weapon. Compare N.J.S.A. 2C:39-7(b)(1) with N.J.S.A. 2C:43-6(c). We do not see the distinction between the charges to be of sufficient significance to invalidate defendant's waiver.

Although the detectives failed to specify the exact nature of the charges pending against defendant, they did not "deliberately and designedly misle[a]d defendant as to his true legal status by providing a vague and incomplete answer to [his] inquiry as to the reason for his arrest" as part of a "planned investigative strategy to elicit incriminating statements . . . ." See State v. Diaz, 470 N.J. Super. 495, 503, 518-19 (App. Div. 2022) (finding Miranda waiver invalid under the totality of the circumstances where before obtaining the waiver detectives, who had not secured a complaint or warrant, informed the defendant they were conducting an investigation "involving narcotics" when they were actually investigating the defendant for a strict liability drug-induced death about which

he was unaware).  Here, defendant was certainly aware that he was a felon and not permitted to possess handguns.  The fact that detectives informed him that he had been charged with "possession of a weapon" as opposed to "possession of a weapon by certain persons not to have weapons" did not deprive defendant of a full understanding of the charges he faced.

C.    Jury Selection.

The Sixth Amendment and Article I, Paragraph 10 of our State Constitution guarantee criminal defendants the right to be tried by an impartial jury.  State v. Williams, 93 N.J. 39, 60 (1983); U.S. Const. amend VI; N.J. Const. art. I, ¶ 10.  "The securing and preservation of an impartial jury goes to the very essence of a fair trial."  Williams, 93 N.J. at 60.  "'The purpose of voir dire is to ensure an impartial jury'" by detecting jurors who cannot fairly decide a matter because of partiality or bias."  State v. O'Brien, 377 N.J. Super. 389, 412 (App. Div. 2004) (quoting State v. Martini, 131 N.J. 176, 210 (1993)).  "[T]rial courts must be allotted reasonable latitude when conducting voir dire and, therefore, a reviewing court's examination should focus only on determining whether 'the overall scope and quality of the voir dire was sufficiently thorough and probing to assure the selection of an impartial jury.'"  State v. Winder, 200 N.J. 231, 252 (2009) (quoting State v. Biegenwald, 106 N.J. 13, 29 (1987)).

A certain persons charge "requires proof of a specific prior conviction," which "automatically entails a risk of prejudice to a defendant in a jury trial." State v. Bailey, 231 N.J. 474, 484 (2018). Where a defendant is tried on a certain persons charge, the prior conviction's potential for "prejudice is minimized by appropriate curative jury instructions." State v. Brown, 180 N.J. 572, 582 (2004). "[O]ur case law has continued to reinforce the principle that appropriate limiting instructions balance the State's efforts to present relevant evidence against a defendant's right to a fair trial." Id. at 583. "[W]e are satisfied that strong limiting instructions regarding prior-crimes evidence . . . will protect a defendant against unfair prejudice." Ibid. In addition, "[i]t is important that potential jurors be informed during voir dire that a defendant is charged with possession of a weapon by a convicted felon so that they can be questioned adequately concerning whether the defendant's criminal past would prejudice their ability to determine the possession issue." Id. at 582.

During voir dire, defendant proposed each prospective juror be asked "[w]ould the fact that someone has previously been convicted of a crime make you more likely, less likely, or as likely to believe they were guilty of the new charges? Please explain your answer." (Question 31). According to defendant, the question was designed to elicit whether a juror believes that a person

previously convicted of a crime has the propensity to commit more crimes. The State objected, arguing the question had the potential to cause confusion or mislead the jurors and the model jury charges adequately address the question of propensity to commit crimes based on a prior conviction.

The trial court excluded the question, finding three other questions posed to prospective jurors addressed "the . . . gravamen of Question 31 talking about presuppositions of potential jurors, their thoughts on propensity, their ability to be fair and impartial, to treat this case independently." The three questions to which the trial court referred were: (1) "[i]s there anything about the nature of the charges themselves that would interfere with your impartiality?"; (2) "[t]he indictment is not evidence of guilt. The fact that the defendant's been arrested and indicted and is facing these charges, would you have any preconceived opinions on his guilt or innocence?"; and (3) "[w]ould you have any difficulty following the principle that the defendant on trial is presumed to be innocent and must not be found guilty of a charge unless each and every essential element of the offense charged is proven beyond a reasonable doubt?" In addition, the model jury charge, which was read to the jury, instructs jurors that evidence of the predicate offense cannot be used to decide that defendant has a tendency to commit crimes.

It was error for the trial court to exclude the question proposed by defendant. As the Supreme Court held in <u>Brown</u>, it is important that prospective jurors are informed a defendant charged with a certain persons offense is a convicted felon so their tendency to equate that conviction with a propensity to commit crimes can be explored. The three questions on which the trial court relied when excluding defendant's proposed question do not address propensity. In addition, the trial court did not explain why defendant's proposed question had the potential to confuse or mislead jurors.

The trial court's error, however, does not warrant reversal of defendant's conviction. In <u>Brown</u>, the Court held an appropriate limiting instruction is sufficient to protect defendants from jurors using the fact of a prior conviction to determine propensity. 180 N.J. at 583. Here, the trial court instructed the jury with respect to defendant's predicate conviction that "[y]ou may not use this evidence to decide that defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that, just because the defendant has committed a prior offense, he must be guilty of the present offense." We are satisfied the instruction given by the trial court adequately protected defendant. with respect to his prior conviction.

31

D.    Prosecutorial Misconduct.

Defendant argues the State repeatedly drew the jury's attention to the fact that investigators obtained search warrants related to defendant.  The State referred to the warrants in its opening statement.  In addition, three of the State's witnesses were questioned about the warrants and two identified copies of the warrants even though they were not submitted as evidence.  In addition, Candelaria testified he submitted the affidavits, which contained "facts" that led to the issuance of the warrants.  Defendant argues the repeated references unfairly reminded jurors that a judicial authority had suspected defendant of criminal activity, denying him a fair trial.

Because defendant did not object to questions concerning the warrants at trial or request a limiting instruction, we review the record for plain error.  State v. Ross, 229 N.J. 389, 407 (2017).  Our inquiry is to determine whether the alleged error was "clearly capable of producing an unjust result . . . ."  R. 2:10-2.  "Not any possibility of an unjust result will suffice as plain error, only 'one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'"  State v. Coclough, 459 N.J. Super. 45, 51 (App. Div. 2019) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).  "It

may be fair to infer from the failure to object below that in the context of the trial the error was actually of no moment." Macon, 57 N.J. at 333.

A prosecutor may convey to a jury that police were authorized by warrant to search a home to "dispel any preconceived notion" the jury may have that the officers acted arbitrarily. State v. Cain, 224 N.J. 410, 435 (2016). However, "repeated statements that a judge issued a search warrant for a defendant's home – when the lawfulness of the search is not at issue – may lead the jury to draw the forbidden inference that the issuance of a warrant by a judge supports rendering a guilty verdict." Id. at 433.

Here, the State made no reference to the underlying homicide investigation and did not elicit testimony that a judge had approved the warrants. In addition, defense counsel raised the homicide investigation in her opening statement, suggesting the State brought the certain persons charges against defendant only because it could not solve the Rouse murder. The State's questions concerning the warrants were intended to counter defendant's suggestion that the underlying investigation was incomplete or improper. While the extent of the questioning about the warrants could have been limited without unfairly hindering the State's ability to present its case, the record does not support a finding of plain error.

E.      Cumulative Error.

When addressing claims of cumulative error, the Supreme Court

> repeatedly [has] made clear that "[t]he proper and
> rational standard [for the review of claimed trial errors]
> is not perfection; as devised and administered by
> imperfect humans, no trial can ever be entirely free of
> even the smallest defect.  Our goal, nonetheless, must
> always be fairness.  "'A defendant is entitled to a fair
> trial but not a perfect one.'"
>
> [State v. Wakefield, 190 N.J. 397, 537 (2007) (second
> and third alterations in original) (quoting State v. R.B.,
> 183 N.J. 308, 333-34 (2005)).]

Thus, where legal errors occur but do not individually warrant reversal of a conviction, if those errors "in their aggregate have rendered the trial unfair, our fundamental constitutional concepts dictate the granting of a new trial before an impartial jury."  State v. Orecchio, 16 N.J. 125, 129 (1954).  "[T]he predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair."  Wakefield, 190 N.J. at 538.

We disagree with defendant's argument that the errors he raised have the cumulative effect of rendering his trial unfair.

F.      Sentencing.

Defendant was sentenced to a discretionary extended term of imprisonment pursuant to N.J.S.A. 2C:44-3(a).  That sentence was imposed after

34                                                              A-3502-19

the court found the State established each of the elements of the extended-term statute. During the pendency of this appeal, the United States Supreme Court in Erlinger held that "the Fifth and Sixth Amendments generally guarantee a defendant the right to have a unanimous jury find beyond a reasonable doubt any fact that increases his exposure to punishment." 602 U.S. at 828. The Court further held, "[v]irtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." Id. at 834 (second alteration in original) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

We recently held that in light of Erlinger, the holding in State v. Pierce, 188 N.J. 155 (2006), is abrogated and "a unanimous jury must find beyond a reasonable doubt that all . . . of the [N.J.S.A. 2C:44-3(a)] factual predicates are present, or the defendant must admit these predicates as part of a knowing and voluntary waiver of the right to a jury trial with respect to extended-term eligibility." Carlton, ___ N.J. Super. at ___ (slip op. at 22-23). We further concluded that application of the holding in Erlinger to the persistent offender statute, N.J.S.A. 2C:44-3, applies retroactively to pipeline cases. Id. at ___ (slip op. at 20); see also Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("We

therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").

We also rejected the State's argument that the harmless constitutional error doctrine applies to the pipeline cases to which Erlinger is retroactively applied. Carlton, ___ N.J. Super. at ___ (slip op. at 60-65). We based that holding on "the Erlinger majority's unambiguous rejection of the notion that overwhelming evidence obviates the need to have a jury make the decision" that the elements of an extended-term statute have been met. Id. (slip op. at 33). We see no reason to depart from that holding, even where, as is the case here, the defendant did not contest the State's argument that the elements of N.J.S.A. 2C:44-3(a) had been satisfied.

We therefore afford the holding in Erlinger pipeline retroactivity to defendant's direct appeal of his sentence. We vacate defendant's extended-term sentence and remand for resentencing consistent with Erlinger and Carlton. If the State seeks to impose an extended-term sentence on remand, the court shall, in the absence of a knowing waiver of defendant's right to a jury trial, hold a jury trial limited to the question of whether defendant is a persistent offender.

See N.J.S.A. 2C:44-3(a). The State shall have the burden of proving, beyond a reasonable doubt, the required persistent offender elements. A jury shall determine whether defendant: was twenty-one years of age or older at the time of committing the crime; "has been previously convicted on at least two separate occasions of two crimes"; committed the earlier crimes "at different times"; was "at least [eighteen] years of age" when he committed the prior crimes; and that the latest of the prior convictions, or the last release from confinement, whichever is later, was "within [ten] years of the date of the crime for which the defendant is being sentenced." N.J.S.A. 2C:44-3(a).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3502-19